```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
LINFO IP, LLC,                                                         :
                                                                       :
                                  Plaintiff,                           :
                                                                       :       24-CV-2796 (JMF)
                -v-                                                    :
                                                                       :       OPINION AND ORDER
TRUSTPILOT, INC.,                                                      :
                                                                       :
                                  Defendant.                           :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      Linfo IP, LLC ("Linfo") brings this patent infringement case against Trustpilot, Inc. ("Trustpilot"), a company that allows users to post reviews of businesses on its webpage. Linfo alleges infringement of U.S. Patent No. 9,092,428 (the "'428 Patent"), titled "System, Methods and User Interface for Discovering and Presenting Information in Text Content." ECF No. 30-1 ("Patent"). Linfo's operative First Amended Complaint ("Complaint") alleges that Trustpilot directly and indirectly infringes claims 1-20 of the Patent. *See* ECF No. 30 ("Comp."), ¶¶ 17-21. Trustpilot now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint on the ground that the '428 Patent's claims are directed to an abstract idea and therefore ineligible for patent protection. *See* ECF No. 32 ("Def.'s Mem."), at 1. For the reasons that follow, the Court agrees and, thus, GRANTS the motion to dismiss.

## BACKGROUND

      The following facts, drawn from the Complaint and the underlying patent, are presumed to be true for purposes of this motion. *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *see also, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)

(noting that, for purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include . . . documents incorporated in it by reference" or documents "integral" to the complaint).

Linfo is a Texas-based corporation that owns the '428 Patent. Comp. ¶¶ 1, 8. The '428 Patent, titled "System, Methods and User Interface for Discovering and Presenting Information in Text Content," was issued on July 28, 2015. *Id.* ¶ 8. At a high level, the patent claims "a computer-assisted method for discovering information in a text content." Patent 3:17-19. The method "provides users with interface objects to act on the discovered information, such as extracting, displaying or hiding, or highlighting or un-highlighting words or phrases in a text content as needed to aid information handling." *Id.* at 4:25-30. In practice, for example, the patented system could help a user browsing online hotel reviews by "gather[ing] all comments about room service of the hotel, and group[ing] them in a meaningful way such as in a hierarchical structure," and allowing the user to "select from the user interface for such actions as 'show only the positive comments', or 'show only the negative comments', etc." *Id.* at 3:2-12. The '428 Patent recites three independent claims — claims 1, 14, and 18 — and seventeen dependent claims — claims 2-13, 15-17, and 19-20. *See* Def.'s Mem. 4.

Claim 1 — which the parties agree is representative, *see* ECF No. 34 ("Pl.'s Opp'n"), at 4 ("Plaintiff agrees with Defendant that Claim 1 is representative."); ECF No. 35 ("Def.'s Reply"), at 1 — is most relevant for present purposes.[1] It provides a method "for discovering information in a text content and extracting and presenting the information." Patent 15:62-64. Given a particular text content, the method selects "semantic attribute[s] for users to select from" and "identif[ies] . . . words or phrases in the text content associated with the . . . semantic

---

[1] Independent claims 14 and 18 are substantially similar to representative claim 1. *Compare* Patent 17:44-18:5, 18:17-46, *with id.* 15:62-16:22.

attribute[s]." *Id.* at 16:1-10.  Where the text content is a set of hotel customer reviews, for example, users might employ the patented method to identify comments associated with a particular attribute, such as room service.  The method then "display[s] an actionable user interface object, wherein the actionable user interface object is associated with a label representing the first name or description or the second name or description." *Id.* at 16:11-14.  From there, the user can "select the first name or description or the second name or description as a user-specified or user-desired attribute." *Id.* at 16:15-17.  So, for instance, a user could use the system's user interface to organize the set of comments about room service by positive comments or negative comments.  Finally, the claim provides a method for "extracting, displaying, storing, showing or hiding, or highlighting or un-highlighting" the "word or phrase associated with the user-specified or user-desired semantic attribute" — for example, exhibiting the positive or negative comments about room service in different formats. *Id.* at 16:18-22.

   Defendant Trustpilot hosts a website on which users can post reviews of businesses and rate businesses on a scale from one to five stars.  *See* ECF No. 30-2, at 3.  Users can filter a business's reviews based on star ratings or highlight comments based on other selected metrics, such as quality.  *See id.* at 7-12.  Linfo alleges that, in employing such a system, Trustpilot "maintains, operates, and administers a system with methods and user interface for discovering information in a text content and extracting and presenting the information that infringes . . . the '428 patent."  Comp. ¶ 17.  Specifically, Linfo alleges that Trustpilot "puts the inventions claimed by the '428 Patent into service (i.e., used them)" and, "but for [Trustpilot's] actions, the claimed-inventions embodiments involving [Trustpilot's] products and services would never have been put into service."  *Id.*

**APPLICABLE LEGAL STANDARDS**

Trustpilot moves to dismiss the Complaint on the ground that the claims of the '428 Patent are unpatentable because they are directed at an abstract idea. *See* Def.'s Mem. 1. Thus, the question presented is whether the claims are patentable.

**A. Standard of Review**

In evaluating that question, the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Linfo's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim survives a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, Linfo must show "more than a sheer possibility that [Trustpilot] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If Linfo's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

**B. Patent Eligibility**

Whether the claims in the '428 Patent are patentable is a question of law that can involve "underlying questions of fact." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358-59 (Fed. Cir. 2020). Thus, patent eligibility may be resolved on a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed.

Cir. 2018). Patents are "presumed valid," and the party challenging the patent's validity — here, Trustpilot — has the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Section 101 of the Patent Act authorizes inventors to obtain patents for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), however, because these are "the basic tools of scientific and technological work," *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972), and to award a patent for their discovery would risk "inhibit[ing] further discovery by improperly tying up the future use of" such tools, *Mayo Collaborative Servs. v. Prometheus Lab'ys., Inc.*, 566 U.S. 66, 85 (2012). At the same time, the Supreme Court has warned against construing this exception too broadly, "lest it swallow all of patent law." *Alice*, 573 U.S. at 217. An invention that applies an abstract idea or law of nature "to a new and useful end" may, therefore, be patent eligible. *Gottschalk*, 409 U.S. at 67 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

Courts apply the two-part test articulated by the Supreme Court in *Alice* to assess patent eligibility. At step one, courts must consider, "in light of [the patent's] specification," whether its claims "as a whole" are directed to an abstract idea or other patent-ineligible concepts. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *see Alice*, 573 U.S. at 218. Critically, a court must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (quoting *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017)). Neither the Supreme Court nor the Federal Circuit has

defined what constitutes an abstract idea. Instead, these courts "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334; *see also Alice*, 573 U.S. at 221 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category . . . ."). Since *Alice*, courts have found numerous "abstract idea[s]" in patent claims, including, as relevant here, methods "directed to collection, manipulation, and display of data" or "customizing information and presenting it to users based on particular characteristics." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340-41 (Fed. Cir. 2017).

Moreover, courts have identified multiple inquiries relevant to *Alice* step one. The first is whether the claimed process "can be accomplished mentally"; if so, the claims are likely directed to an abstract idea. *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 183 (S.D.N.Y. 2018). If the patent claims an abstract "result or effect" while invoking "generic processes and machinery," then the claims are directed to an abstract idea. *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Indeed, patent claims must "go beyond stating a functional result [and] identify how that functional result is achieved by limiting the claim scope to . . . concrete action." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) (internal quotation marks omitted). Particularly in the context of computer-based patents, courts must determine "whether the 'focus of the claims' is on a 'specific asserted improvement in capabilities, or instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336) (cleaned up). Put differently, "[a]n abstract idea does not become nonabstract by limiting the

invention to a particular field of use or technological environment, such as the Internet." *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

If the main thrust of the claims is a patent-ineligible concept, then courts must proceed to *Alice* step two and consider whether any of the claims "transform that abstract idea into a patent-eligible invention," *Alice*, 573 U.S. at 221 — that is, whether the claims, "both individually and 'as an ordered combination,'" offer an "inventive concept," *id.* at 217 (quoting *Mayo*, 566 U.S. at 72, 79). The purpose of the inquiry is to determine whether the claims "amount[] to significantly more than a patent upon the ineligible concept itself." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 218) (cleaned up). Most importantly, if the only possible "inventive concept is the application of an abstract idea using conventional and well-understood techniques," then the patent fails at *Alice* step two. *BSG Tech LLC*, 899 F.3d at 1290-91 (internal quotation marks omitted). It follows that implementing an abstract idea on a computer, without more, does not make otherwise ineligible claims patentable. *See Alice*, 573 U.S. at 222 ("[C]omputer implementation did not supply the necessary inventive concept." (citing *Gottschalk*, 409 U.S. at 67)); *Intell. Ventures*, 792 F.3d at 1367 ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."). By contrast, claim limitations that direct "the non-conventional and non-generic arrangement of known, conventional pieces" comprise an inventive concept. *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019) (noting that patent claims using conventional technology in novel ways comprise an inventive concept). Any "inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

**DISCUSSION**

Construing the factual allegations in the Complaint in the light most favorable to Linfo, the Court concludes that Trustpilot has met its burden of proving unpatentability. Taken together, and considered with the specification, the '428 Patent's claims are directed to the abstract idea of extracting and presenting information. And claim 1 of the Patent, which is representative, does not add an inventive concept to that abstract idea. Accordingly, the claims are not eligible for patent protection.

**A.  *Alice* Step One**

The Court begins with step one of the *Alice* inquiry. The '428 Patent claims a method that "provides users with interface objects to act on the discovered information, such as extracting, displaying or hiding, or highlighting or un-highlighting words or phrases in a text content as needed to aid information handling." Patent 4:25-30. By Linfo's own account, the purpose of the patented invention is to "provide a system, methods and user interface objects as *efficient tools* for users to gather information from unstructured text contents with less effort." *Id.* at 2:66-3:2 (emphasis added). Unfortunately for Linfo, the Federal Circuit has held repeatedly that "claims focused on collecting information, analyzing it, and displaying certain results of the collection and analysis are directed to an abstract idea." *SAP Am., Inc.*, 898 F.3d at 1167 (internal quotation marks omitted) (collecting cases); *see, e.g.*, *Elec. Power Grp., LLC v. Alstom, S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (treating "collecting information," "analyzing information by steps people go through in their minds," and "merely presenting the results" of those processes as "within the realm of abstract ideas"); *Cap. One Fin. Corp.*, 850 F.3d at 1340-41 (holding that claims directed to a single display of information collected from various sources are abstract); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed.

Cir. 2018) (finding "abstract" the "[r]ecitation, as in this case, of the collection, organization, and display of two sets of information on a generic display device"); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361-62 (Fed. Cir. 2023) (same). In other words, it is well established that data extraction, organization, and display functions are focused "on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *BSG Tech LLC,* 899 F.3d at 1286 (internal quotation marks omitted).

The '428 Patent's concept falls squarely within this well-established category of abstract ideas. At the highest level, the patent claims a process for collecting data (for example, customer reviews), selecting data based on user preferences, and displaying the results of that data selection. Indeed, the invention helps convert "the computer system that displays the text contents to the reader" into "a *tool* that can help the reader locate specific information quickly and accurately." Patent 2:55-58 (emphasis added); *see also id.* at 2:59-62 (explaining that for readers browsing hotel reviews, "it would be much more efficient if the site could provide a tool that lets the reader select a criterion and click a button, and then present all the information the reader is looking for in an easy-to-digest way"). The claims are thus "directed to collection, manipulation, and display of data" or, put another way, "customizing information and presenting it to users based on particular characteristics," *Cap. One Fin. Corp.*, 850 F.3d at 1340, "which places them in the familiar class of claims directed to a patent-ineligible concept," *Trinity Info Media, LLC*, 72 F.4th at 1362 (internal quotation marks omitted); *see also Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 Fed. App'x 882, 887 (Fed. Cir. 2019) (summary order) (noting that "tailoring information based on provided data . . . is an abstract idea" (cleaned up)).

That Linfo's patent claims are directed at an abstract idea is further confirmed by the fact that the '428 Patent's system merely automates a mental process. Indeed, "[a] telltale sign of

abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper." *Trinity Info Media, LLC*, 72 F.4th at 1361-62 (internal quotation marks omitted). Just so here. A human can manually survey customer reviews; sort reviews based on particular attributes; and extract, highlight, and compile certain text associated with those attributes into lists, charts, and word clouds. *See* Def.'s Mem. 16 ("The '428 Patent does nothing more than execute well-known and long-employed mental processes on preexisting generic computers operating in their ordinary manner using purely functional terms[.]"). The '428 Patent essentially concedes as much when it notes that "digging out information related to [hotel services] from the numerous reviews can be very time-consuming by conventional search methods." Patent 2:28-30; *see also, e.g.*, *id.* at 2:49-55 (observing that "if a reader is reading a long medical document, and he wants to find out what drugs may have interaction with other drugs, it can also be a very time-consuming task to locate such information in the document one by one"). "[A]utomating these steps," however, "does not render the process patentable; it merely makes the process more efficient." *Guvera IP Pty Ltd. v. Spotify, Inc.*, No. 21-CV-4544 (JMF), 2022 WL 4537999, at *5 (S.D.N.Y. Sept. 28, 2022), *aff'd sub nom*. 2024 WL 1433505 (Fed. Cir. Apr. 3, 2024); *see* Patent 2:59-61 (noting that it "would be much more *efficient* if the site could provide a tool that lets the reader select a criterion and click a button, and then present all the information the reader is looking for" (emphasis added)). On its face, then, the '428 Patent claims only a mental process. *See, e.g.*, *Ghaly Devices LLC v. Humor Rainbow, Inc.*, 443 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) ("[C]ourts 'have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.'" (quoting *Elec. Power Grp., LLC*, 830 F.3d at 1354)).

Linfo's response is hard to follow and ultimately beside the point. Linfo first recites excerpts of the '428 Patent verbatim to show that "[t]he '428 patent specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete." Pl.'s Opp'n 5-8. Linfo then objects to Trustpilot's "oversimplification" of its patent claims and argues that "the claims of the '428 patent are not directed to a result but rather a specific and concrete solution for solving the technological problem of searched scattered text contents." *Id.* at 8-9. None of this, however, responds to Trustpilot's principal objection. To be sure, at *Alice* step one, "a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it to avoid ineligibility." *Free Stream Media*, 996 F.3d at 1363 (cleaned up). But Trustpilot's principal objection is not that Linfo fails to articulate a solution to the "problem of searching scattered text contents" with sufficient specificity. *See* Pl.'s Opp'n 9. Instead, the point is that, "[e]ven assuming the specification sufficiently discloses how the [technological problem] is overcome," Linfo's "alleged technological improvement does nothing more than implement a computer to achieve the abstract idea" of extracting and displaying information. *See Free Stream Media*, 996 F.3d at 1364-65. And to this point, Linfo has no answer.[2]

## B.  *Alice* Step Two

Given that the '428 Patent is directed to an abstract idea, the Court must proceed to step two of the *Alice* inquiry, which considers whether the patent claims contain an "inventive concept." *Alice*, 573 U.S. at 217-18. Whether considering the claim elements of representative claim 1 individually or as an ordered whole, the Court finds nothing that converts the abstract

---

[2]  Linfo's failure to address Trustpilot's arguments is perhaps explained by the fact that, as Trustpilot observes, Linfo's opposition "recycles — nearly verbatim — the same 'cookie cutter' arguments that it previously filed in at least five other cases." Def.'s Reply 1 & n.2.

idea to an inventive concept.  Indeed, Linfo does not provide any non-conclusory allegations that the '428 Patent claims an inventive concept sufficient to transform it into a patent-eligible process.  *See* Comp. ¶ 9-11.  Instead, Linfo cites only "routine steps," *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017), which do not go significantly beyond instructions for implementing the abstract idea of data collection, manipulation, and display on a computer, *see BASCOM*, 827 F.3d at 1349; *see also Quantum Stream Inc.*, 309 F. Supp. 3d at 188 ("[T]asks that are implemented by generic computer system arrangements but that a human operator, even with a pencil and paper, can also perform in real-time with the assistance of a device to implement the human's commands typically do not, without more, entail an inventive concept and thus are unpatentable.").  "It is well-settled," however, "that placing an abstract idea in the context of a computer does not 'improve' the computer or convert the idea into a patent-eligible application of that idea."  *Interval Licensing LLC*, 896 F.3d at 1346.

      Linfo argues that the inventive concept embedded in the patent is its "user interface object for extracting and presenting results using context terms."  Pl.'s Opp'n 11 (cleaned up).  The user interface object "cannot be said to be conventional," Linfo argues, because "[t]he patent specification provides that such a tool would be beneficial" — specifically, the patented invention "provide[s] a solution to a specific problem arising in scattered text content searching."  *Id.* at 11-12.  But this conclusory reply is unpersuasive.  For one thing, the Complaint does not allege what "unconventional technological solution" the '428 Patent provides to a "technological problem."  *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 499 (S.D.N.Y. 2020).  Linfo does not, for example, allege how its process for collecting and displaying information constitutes an improvement in the technology.  *See Alice*, 573 U.S. at 225

(noting that the method claims fail to "effect an improvement in any other technology or technical field").

Indeed, to recite Linfo's own description of the user interface object is to show that it lacks an inventive concept. The user interface object "can display one or more attributes or a description of the attributes in user interface to the user, and for the user to select for an action." Patent at 6:4-6. So, for example, "users [reviewing a medical document] can act on a button labeled 'extract terms that are drug names,' in which the 'extract' is an action, and 'drug names' is an attribute or attribute name." *Id.* at 6:17-19. And, broadly speaking, the user interface object can take the form of "a dropdown menu with options[,] . . . a set of radio buttons, a slider, or *any sort of object* that allows a user to selectively indicate an option." *Id.* at 9:67-10:3 (emphasis added). As the Federal Circuit has explained, however, "[o]ffering a user the ability to select information to be displayed" — which is the user interface object's core function — "is one of the most basic functions of a computer." *Interval Licensing LLC*, 896 F.3d at 1347 (internal quotation marks omitted).

At best, then, the '428 Patent "improves the efficiency of [information collection and display] and adds nothing that could qualify as an inventive concept." *Guvera IP*, 2022 WL 4537999, at *7. Indeed, it is firmly settled that "[a]dding speed and efficiency to an otherwise conventional process . . . does not qualify as the requisite inventive concept." *Id.*; *see also Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [is] insufficient to render the claims patent eligible as an improvement to computer functionality." (cleaned up)); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed.

13

Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

Linfo's argument at *Alice* step two rests entirely on one out-of-circuit district court opinion: *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. 14-CV-732 (RGA), 2015 WL 1744343 (D. Del. Apr. 15, 2015).  *See* Pl.'s Opp'n 12-13.  That decision is nonbinding and, in any event, inapposite.  The district court in *Messaging Gateway Solutions* held that the claim in question — which "translat[ed] [SMS text messages] in a way that allows the computer to receive and understand the message" — contained an inventive concept because it was "addressed to a specific problem arising in the realm of mobile device-to-Internet communication."  *Messaging Gateway Sols.*, 2015 WL 1744343, at *5-6.  Applying that holding to this case, Linfo asserts that "the claims here are directed as a whole to a specific problem arising in the realm of 'scattered text content searching'" — a problem that, Linfo asserts, was "created" by "the technology" (that is, computers).  Pl.'s Opp'n 12.  If this assertion sounds far-fetched, however, that is because it is.  As Trustpilot rightly observes, there is nothing new about the problem of sorting and extracting information from large volumes of text.  *See, e.g.*, Def.'s Mem. 17-18.  In other words, Linfo's claims do not provide a solution "tethered to the technology that created the problem."  *Messaging Gateway Sols.*, 2015 WL 1744343, at *5.  The "inventive concept" Linfo claims, then, is nothing more than "a mere instruction to implement an abstract idea on a computer."  *Alice*, 573 U.S. at 223 (cleaned up).

In short, extracting and displaying information from unstructured text contents is an abstract idea.  Even assuming the user interface object offers a new way of performing those functions on a computer, the "[n]ovelty of an invention" alone cannot "avoid the problem of abstractness."  *In re Morsa*, 809 F. App'x 913, 918-19 (Fed. Cir. 2020) (per curiam).  The Court

14

thus concludes that there is no inventive concept in the '428 Patent claims, the patent's specification, or Linfo's Complaint.

## CONCLUSION

For the foregoing reasons, the '428 Patent's claims are directed to an abstract idea and, on that basis, not eligible for patent protection. Accordingly, Trustpilot's motion to dismiss must be and is GRANTED, and the Complaint is DISMISSED.[3]

Linfo requests leave to amend. *See* Pl.'s Opp'n 13-14. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend, *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Here, the problem with Linfo's claims is substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases); *Ghaly Devices*, 443 F. Supp. 3d at 434 (denying leave to replead where patent claims were found ineligible). Notably, in seeking leave to amend, Linfo states only that it "is warranted, to permit [P]laintiff to assert factual allegations and theories, so that Plaintiff's case can be adjudicated on its merits." Pl.'s Opp'n 13-14. But this conclusory statement offers no suggestion that Linfo is in possession of facts that would cure the problems with its claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave

---

[3] In the alternative to seeking dismissal on the basis of patent ineligibility, Trustpilot argues that, at a minimum, Linfo's claims for "willful, induced, and contributory infringement" should be dismissed. *See* Def.'s Mem. 22-25. In its memorandum of law in opposition to the motion, Linfo failed to respond to that alternative argument altogether. Accordingly, and notwithstanding the fact that the Court's ruling above moots the issue altogether, the Court deems Linfo's willful, induced, and contributory infringement claims to be abandoned. *See, e.g.*, *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Finally, the Court granted Linfo leave to amend in response to Trustpilot's first motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 29.  "Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*."  *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) (citing cases)).  Accordingly, Linfo's request for leave to amend is DENIED.

The Clerk of Court is directed to terminate ECF No. 31, to enter judgment in favor of Trustpilot consistent with this Opinion and Order, and to close this case.

SO ORDERED.

Dated: January 3, 2025
       New York, New York

                                                JESSE M. FURMAN
                                                United States District Judge